**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Orlando Division**

**MICHAEL DAVIS,**

     **Plaintiff**

                                  **CASE NO.:**

**vs.**

**JOHN W. MINA,** in his Official Capacity
As Sheriff of Orange County, **DEPUTY**
**MICHAEL FULLER,** in his individual
capacity, **DEPUTY TODD MAHONEY,**
in his individual capacity, and **DEPUTY**
**RANDOLF HERSCHELMAN**, in his
individual capacity,

     **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, MICHAEL DAVIS (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, and hereby files his Complaint against Defendants, JOHN W. MINA, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ORANGE COUNTY (generally referred to as "MINA" or "SHERIFF"); DEPUTY MICHAEL FULLER, in his individual capacity (generally referred to as "FULLER"); DEPUTY TODD MAHONY, in his individual capacity (generally referred to as "MAHONY"); and DEPUTY RANDOLF HERSCHELMAN, in his individual capacity

(generally referred to as HERSCHELMAN) (said individual deputies collectively referred to as Defendant deputies).

## PARTIES

1.    Plaintiff is and was at all times relevant hereto, a resident of Orange County, Florida, and was over the age of 18 at the time of the events in question.

2.    Sheriff John W. Mina was in office at the time of the underlying events and is the current "constitutional officer" who employed and continues to employ the Defendant deputies identified in this Complaint. MINA, as Sheriff of Orange County, serves as "the head of such [governmental] entity in … his official capacity… ." Section 768.28(9)(a), Fla. Stat. [Added]. That entity is organized under the laws of the State of Florida, with the capacity to be sued within the parameters of §768.28(9)(a).

3.    At all times relevant herein, Defendant deputies employed by that entity were acting under color of law of the State of Florida and with the tacit approval of their employer, MINA. Accordingly, John W Mina, in his official capacity as Sheriff of Orange County Florida, is a properly named defendant in this action with respect to violations of both 42 U.S.C. §1983 and §768.28(9)(a).

4.   Defendant FULLER is a deputy sheriff employed by MINA, is over the age of 18 and, upon information and belief, is a resident in or conducts business in Orange County, Florida and is being sued in his individual capacity pursuant to 42 U.S.C. §1983.

5.   Defendant MAHONEY is a deputy sheriff employed by MINA, is over the age of 18 and, upon information and belief, is a resident in or conducts business in Orange County, Florida and is being sued in his individual capacity pursuant to 42 U.S.C. §1983.

6.   Defendant HERSCHELMAN is a deputy sheriff employed by MINA, is over the age of 18 and, upon information and belief, is a resident in or conducts business in Orange County, Florida and is being sued in his individual capacity pursuant to 42 U.S.C. §1983.

## JURISDICTION

7.   This action is properly filed in the Middle District of Florida, Orlando division, as all material facts of this cause of action occurred on or about August 9, 2019, in Orange County, Florida

8.   This is an action for damages in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) exclusive of attorney's fees and costs.  This action is brought, along with a claim related to Florida law, under

the provisions of 42 U.S.C. §1983 and §1988 and the Fourth Amendment to the United States Constitution, as well as Title 28 U.S.C. §1331 and §1343(a)(3) and (4), to redress the deprivation, under color of law, of any right, privilege or immunity secured by the United States Constitution, and 28 U.S.C. §1367 which provides supplemental jurisdiction over state law claims.

9.     This action arises under 42 U.S.C. §1983, which provides:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or others person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress… .

10.     Pursuant to §768.28(6)(a), Plaintiff has previously notified SHERIFF of his claims prior to the filing of this action and said claims were not resolved within the period of time provided by the statute. Plaintiff has fully complied with §768.28(6)(a), including providing timely notice and service, if applicable, to the Florida Department of Financial Services.

11.     All conditions precedent to the filing of this action have occurred, accrued or have been waived as a matter of law.

## **GENERAL  ALLEGATIONS**

12.     On or about August 9, 2019, Defendant FULLER claims to have been on a routine patrol of the area of Blaise Drive and E. Colonial Drive at 10:22 A.M., when he claims to have spotted an ATV ridden by Plaintiff, whom he allegedly immediately recognized and knew as having had a "felony warrant" and was known as a "habitual traffic offender."

13.     Plaintiff was traveling in the area from his home on an ATV, where he was attempting to go to a local convenience store.

14.     There were numerous deputy sheriffs dispatched to the area to assist in the search for Plaintiff. They conducted a search on private property and through public thoroughfares, until they came into contact with Plaintiff.

15.     Plaintiff had no weapon of any kind in his possession at any time.

16.     Plaintiff never provided any resistance of any kind to any instruction by any deputy sheriff and never posed any physical threat to any deputy sheriff at the scene.

17.     Indeed, Plaintiff's lack of any aggression or violence is fully borne out by the fact that he was arrested and charged only with resisting arrest *without* violence, a misdemeanor.

18.     Upon coming into contact with Plaintiff, an unidentified deputy

can be seen on body cam video instructing Plaintiff to "get on the ground or I will taser you." Plaintiff can be seen standing on his feet with both hands fully visible as he attempts to comply with the deputy's instructions by getting on the ground.

19.     Simultaneously to Plaintiff going to the ground, one can see in a separate body cam video, an unidentified deputy throwing multiple closed fisted punches to the head of the Plaintiff.

20.     Contemporaneous to the head blows, it can be seen on a body cam video that one of Defendant deputies came charging in and jumping from behind onto  Plaintiff's back torso and then delivering multiple head blows to Plaintiff, before applying his knee to Plaintiff's neck. One can hear the audible "shriek" of Plaintiff while he lay vulnerable on the ground at the time of the vicious knee attack.

21.     Subsequent to the brutal attack by at least two other Defendant deputies, one can see on the body cam video significant swelling and bleeding to the head of Plaintiff which was not present prior to the time of Defendant deputies' engagement.

22.     Again, on body cam, one sees the arrival of paramedics and the attempted "cover-up" of events by Defendant deputies, wherein they ask the

mentally incoherent Plaintiff how he got his injuries. During the paramedics' interview of Plaintiff, one can hear another unidentified deputy manufacture a fabricated story that "he (referring to Plaintiff) must have hit his head while riding in the woods on the ATV".

23.    Plaintiff was immediately taken to Orlando Regional Medical Center, with a diagnosis of a fractured 11th rib on the left-side, fracture of the first, second, and third Lumbar Vertebra, and lacerations to the head and face.

## COUNT I:
## 42 U.S.C. § 1983 AGAINST DEFENDANT DEPUTIES

24.    This is a cause of action for violation of civil rights under 42 U.S.C. §1983 against Defendants FULLER, MAHONEY and HERSCHELMAN, all of whom were acting in concert, in causing an "indivisible" injury to Plaintiff. Under such circumstances, the Eleventh Circuit, as well as virtually all other federal circuits and Florida, has held or accepted that the doctrine of joint and several liability permits allegations against multiple defendants, acting in concert, to be set forth in a single, consolidated count.

25.    Accordingly, because of joint and several liability, it is unnecessary, and at this stage, difficult to identify and segregate which

individual Defendant deputy  committed which particular assaultive act in causing said indivisible injury. In any event, all named Defendant deputies in this Complaint have access to the body cams and, more importantly, were present at the scene and can decide amongst themselves which Defendant deputy committed which particular act in their joint assault upon Plaintiff.

26.     For purposes of this pleading, any further particularization of the individual acts of each of the joint tortfeasor deputies is unnecessary under Florida as well as federal law. Surely, Plaintiff, who was being pummeled and kneed to the ground from behind, was not in a position to take notes on what each deputy was doing during their brutal and unjustified beating of him.

27.     Plaintiff realleges the allegations contained in paragraphs 1 through 23 above, as if more fully set forth herein.

28.     Plaintiff has the right under the United States Constitution to be free from the use of excessive force and battery.

29.     All three identified Defendant deputies were acting under color of law, and violated Plaintiff's well-established Fourth Amendment constitutional right to be free from excessive force.

30.     All three identified Defendant deputies, acting in concert, used excessive and unnecessary force in collectively assaulting Plaintiff by

slamming a knee into Plaintiff's back and punching his head without any justification. These actions were in violation of Plaintiff's Federal constitutional right to be free from such excessive and unnecessary force. No reasonable law enforcement officer in their position could have thought that the facts and circumstances were such that justified their collective actions.

31.    On or about August 9, 2019, all three Defendant deputies, acting under the color of law and as employees of MINA, deprived Plaintiff of his rights under the United States Constitution in violation of 42 U.S.C. §1983, in that they collectively used excessive and unjustified force in punching and kneeing Plaintiff which caused physical pain and suffering. Their combined actions were wrong, illegal and amounted to an intentional and unconstitutional use of excessive force.

32.    Defendant deputies took the actions complained of above with knowledge that said actions were in direct violation of the United States Constitution and the rights of Plaintiff.  The acts of Defendant deputies violated the clearly established Federal constitutional right of Plaintiff to be free from the use of excessive force, a right of which every reasonable member of law enforcement should have known.

33.    As a direct result of their concerted actions, Plaintiff has suffered

significant damages, including but not limited to, extreme physical discomfort, pain and suffering, emotional damage, mental suffering and other damages, which exist to this day and which are likely to continue into the future.

34.     The conduct by each of Defendant deputies was indicative of reckless or callous indifference to the federally protected rights of Plaintiff and, accordingly, under the *Smith v. Wade* doctrine, warrant the imposition of punitive damages against each Defendant deputy in an amount to be determined by the jury.

35.     Plaintiff has retained the undersigned counsel to bring this action under 42 U.S.C. §1983 and is entitled to recover from Defendant deputies a reasonable counsel fees pursuant to 42 U.S.C. §1988 and all other relevant federal statutes.

## COUNT II:
## 42 U.S.C. §1983 AGAINST DEFENDANT MINA

36.     This is a cause of action for violation of civil rights under 42 U.S.C. §1983 against Defendant MINA, not predicated on vicarious liability, but instead independently predicated upon the implied, if not affirmative, ratification by MINA, acting through his delegated supervisors, of the

misconduct of Defendant deputies alleged in this Complaint, who were not disciplined or chastised for the misconduct alleged even though such conduct was fully captured on the body cams.

37.    Plaintiff realleges the allegations contained in paragraphs 1 through 35 above, as if more fully set forth herein.

38.    MINA and/or his supervisors, acting collectively as the final policymakers, did not criticize or discipline his Defendant deputies even upon review of the available body cams and, thus, can be said to have approved or ratified the unlawful conduct of his deputies as set forth in Count I.

39.    Even a failure by MINA to conduct a serious investigation into unwarranted assaults by deputy sheriffs may be held to constitute ratification of the illegal acts of the deputies. MINA was put on formal notice as to the allegations of this Complaint by virtue of the pre-suit notice provided to him pursuant to §768.28(6)(a) more than six months prior to the filing of this action. Municipal inaction, such as a notable failure to discipline subordinates who knowingly violate civil rights, can give rise to an inference of an unlawful municipal policy of ratification of known and unconstitutional conduct, within the meaning of the *Monell* doctrine.

40.    Accordingly, MINA should be held liable for all compensatory

damages sustained by Plaintiff as alleged in Count I under the theory of post-event ratification which, by itself, suggests a pre-event custom or policy by MINA to turn a blind eye to intentional misconduct of his deputies and to permit such conduct to continue without fear of termination or criticism by MINA.

**COUNT III:**
**§768.28(9)(a) AGAINST DEFENDANT MINA**

41.     This is a cause of action under Florida's waiver of sovereign immunity statute, Section 768.28(9)(a), Fla. Stat., which provides specified and limited relief for torts committed by the state or any of its agencies or subdivisions for injury or loss of property.

42.  Plaintiff realleges the allegations contained in paragraphs 1 through 23 above, as if more fully set forth herein.

43.   Despite the intentional and unconstitutional conduct alleged in Count I against Defendant deputies, there is no allegation that said deputies "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" as set forth in §768.28(9)(a). Accordingly, the liability for their conduct, under Florida state law, falls upon the state agency employer, MINA, and not the state agency

employees.

44. Current case law in this Circuit equates "bad faith with actual malice" which only applies when the conduct was committed with "ill will, hatred, spite, or an evil intent," a standard found by the United States Supreme Court to be even more severe than "reckless or callous indifference" which alone is sufficient to support a claim for punitive damages under the common law. That same body of case law defines the "wanton and willful requirement" as describing conduct "much more reprehensible and unacceptable than mere intentional conduct."

45. Accordingly, the allegations in Count I against Defendant deputies do not rise to that level of extreme malfeasance and present no inconsistency with the allegations in this Count which, under §768.28(9)(a), imposes liability strictly upon the state agency employer and not the state agency employees in the absence of any allegations of *actual* malice, meaning "ill will, hatred, spite, or an evil intent."  Allegations of *actual* malice, as that term has been defined, are not being made in any of the counts in this Complaint.

46. Additionally, it is noteworthy that at no time were Defendant deputies chastised or punished by MINA. Those deputies are presumably still on the job without demotion in rank or pay. Thus, it would be inequitable, as

well as factually unsupportable under this Complaint, for MINA to contend that said deputies "acted in bad faith or with malicious purpose" so as to avoid agency liability under §768.28(9)(a).

47. Stated differently, the willful and conscious failure of MINA to have separated these deputies from service estops MINA from escaping state agency employer liability, which is the policy decision behind the legislative enactment of §768.28(9)(a).

WHEREFORE, based upon the foregoing, Plaintiff respectfully requests (1) entry of a judgment in Plaintiff's favor against Defendant deputies FULLER, MAHONEY and HERSCHELMAN, joint and severally, for compensatory and punitive damages and an award of attorneys fees under Count I; (2) entry of a judgment in Plaintiff's favor against the SHERIFF for compensatory damages and an award of attorney fees under Count II; and (3) entry of a judgment in Plaintiff's favor against the SHERIFF for compensatory damages as set forth in Section 768.28(5)(a) under Count III; and an award for such further and additional relief as may seem just and fair to this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 13th day of January, 2023.

Respectfully Submitted,

*/s/ Jason J. Recksiedler, Esq.*

JASON      J.      RECKSIEDLER,
ESQUIRE
Florida Bar Number: 092060
CAROLINE    FISCHER    ESPI,
ESQUIRE
Florida Bar Number:  1008358
**First Choice Law, P.A.**
1137 Edgewater Dr.
Orlando, Florida 32804
Telephone:  321-999-1111
Facsimile:  321-221-4262
Jason@firstchoicelaw.com
Caroline@firstchoicelaw.com
Litigation@firstchoicelaw.com
*Attorneys for Plaintiff*